UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOANNA JANE ERVIN, | Case No. 22-10892 |
| Plaintiff, | Gershwin A. Drain<br>United States District Judge |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr.<br>United States Magistrate Judge |
| Defendant._____/ | |

**REPORT AND RECOMMENDATION
<u>CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10; 13)</u>**

Plaintiff Joanna Ervin brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 10), the Commissioner's cross-motion for summary judgment (ECF No. 13), Plaintiff's reply (ECF No. 14) and the administrative record (ECF No. 8).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 10), **GRANT** Defendant's

motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner's decision.

I.  **DISCUSSION**

   A.  **Background and Administrative History**

Plaintiff alleges her disability began on July 12, 2019.  On November 14, 2019, she applied for disability insurance benefits.  Plaintiff alleged that she was disabled because of fibromyalgia, degenerative disc disease, pain syndrome; arthralgia; seronegative spondyloarthropathy; inflammatory polyarthropathy; asthma; chronic fatigue syndrome; adjustment disorder; depression; anxiety; PTSD; and OCD.  (ECF No. 10, PageID.568).  Her application was denied on January 27, 2020.  (*Id.*).

Plaintiff appealed to the reconsideration level, where her application was denied.  (*Id.*).  Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  On November 10, 2020, ALJ Kevin Fallis held a hearing.  On January 21, 2021, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff later submitted a request for review of the hearing decision.  On March 2, 2022, the Appeals Council denied Plaintiff's request for review.  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on April 26, 2022.

2

### B. Plaintiff's Medical History

The relevant portions of Plaintiff's medical record are discussed as required in the analysis portion of this report and recommendation.

### C. The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 12, 2019, the alleged onset date. At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar, cervical, and thoracic spine; fibromyalgia; occipital neuralgia; migraines; endometriosis; asthma; mild right patellofemoral chondromalacia; right heel spur; right plantar fasciitis; right tarsal tunnel syndrome; anxiety; depression; post-traumatic stress disorder; adjustment disorder; and bipolar disorder. (ECF No. 8, PageID.59). At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC to perform light work, except:

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

3

>The claimant can never climb ladders, ropes, or scaffolds. She can occasionally do the following: climb ramps or stairs, stoop, kneel, crouch, or crawl. The claimant can frequently balance. She can occasionally use right foot controls. The claimant has to avoid concentrated exposure to the following: extreme heat, extreme cold, humidity, wetness, and environmental irritants (such as fumes, odors, dust, and gases). She has to avoid concentrated use of hazardous moving machinery. The claimant has to avoid all exposure unprotected heights. The claimant is limited to simple routine repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine workplace changes; she can have only occasional interaction with coworkers and supervisors; and she can have no interaction with the public.

At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as bench assembler, inspector, and packer. The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since July 12, 2019, the date the application was filed.

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

E. **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

6

decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F. Analysis

Plaintiff argues two sources of error before this Court. First, Plaintiff argues that the ALJ failed to properly evaluate Dr. Zaroff's opinion and the ALJ's reasons for discounting Zaroff's opinion were impermissible. Second, Plaintiff argues the ALJ tiptoed past Plaintiff's use of a cane in the RFC or explain his omission. The Court shall address each argument in turn.

On February 18, 2020, psychiatrist Dr. Mark Zaroff evaluated Plaintiff. (ECF No. 10, PageID.570). Dr. Zaroff noted that establishing and maintaining rapport was "challenging" and that Plaintiff was "easily distressed[.]" (ECF No. 8, PageID.447). He noted she talked "at length, even with basic queries" and he had to interrupt Plaintiff a "couple of times and explained that it was difficult to keep up." (*Id.* at PageID.448). Dr. Zaroff noted Plaintiff had stiff posture and brought her therapy dog with her. (*Id.*).

Dr. Zaroff concluded Plaintiff's "prognosis is poor. She does seem to be quite overwhelmed at this time, easily upset." (*Id.* at PageID.450). Zaroff noted Plaintiff's complaints of chronic pain that interfered with sleep and that this

7

seemed to be "compromising her frustration tolerance and overall ego strength as well." (*Id.*). He observed no impairment in her ability to understand, remember, and apply and carry out simple instructions, but conveyed "[t]here is going to be a moderate to marked impairment in her ability to understand, remember, and apply complex instructions and carryout detailed instructions." (*Id.*). Zaroff observed marked impairment in Plaintiff's social interaction, and that she tends to be easily upset, distressed, off task, and she would not respond well to criticism or be able to deal with demanding situations. (*Id.*). He noted a marked impairment in Plaintiff's ability to adapt to changes in the work setting or travel to unfamiliar places. (*Id.*). Zaroff noted Plaintiff's subjective reports of "marked impairment in her ability to work a full day without rest periods." (*Id.*).

The ALJ assesses both treating and non-treating medical evaluations based on how well they are supported by the rest of the record. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). The factors an ALJ must consider in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the

claimant; specialization; and any other factors that support or undermine the medical opinion. §§ 404.1520c(c), 416.920c(c). ALJ must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to . . . . explain" the consideration given to the remaining factors. §§ 404.1520c(a-b); 416.920c(a-b).

Under the regulations, "supportability" means the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For "consistency," the regulations explain that the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2). The undersigned notes that the ALJ's opinion can be considered to be a whole when determining whether his factual findings were supported by substantial evidence. *Ledsome v. Comm'r of Soc. Sec.*, 2021 WL 6101427, at *7 (N.D. Ohio Dec. 8, 2021).

The ALJ found Dr. Zaroff's opinion was partially persuasive because his opinion was "generally consistent with the claimant having significant mental functioning issues" but noted inconstancies as well. (ECF No. 8, PageID.67). The ALJ determined that Dr. Zaroff's opinion gave too much reliance to the claimant's

subjective complaints, was based on a partial evidentiary record and that hearing level evidence supports a finding that the claimant has some different limitations, his opinions were not generally consistent with the record as a whole, and the record of Plaintiff's examinations, activities, treatment notes, and some of the hearing testimony "support a finding that mentally the claimant is limited to simple routine repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine workplace changes; she can have only occasional interaction with coworkers and supervisors; and she can have no interaction with the public." (*Id.*).

Plaintiff argues that the ALJ failed to properly evaluate Dr. Zaroff's opinion because the ALJ impermissibly criticized Dr. Zaroff's reliance on the claimant's subjective complaints. (ECF No. 10, PageID.577). Plaintiff asserts that an ALJ may not reject a mental health professional's opinion for being based on subjective reports from a claimant, because psychology and psychiatry are dependent on the subjective presentations of the patient. (*Id.* at PageID.577-78). Plaintiff argues that reliance on an individual's self-reports is not necessarily an adequate basis for the ALJ to reject the opinion. (*Id.*). Plaintiff asserts "one of [the ALJ's] primary reasons" for discounting Zaroff was his reliance on the Plaintiff's subjective reports, when subjective reports are a standard and customary technique of psychology. (*Id.* at PageID.578).

10

"Supportability" means that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to her medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "In other words, the supportability analysis 'focuses on the physicians' explanations of the opinions.'" *Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *4 (E.D. Mich. Mar. 30, 2022) (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-CV-1119-TMP, 2021 WL 3056108, at *10 (W.D. Tenn. July 20, 2021) (further citation omitted)). Even in the mental health context, the ALJ may assess the veracity of subjective reports when examining how supportable a medical opinion is. *Id.* ("The ALJ's observation that '[t]he doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported' is a criticism of Dr. Bray's explanation of his reasoning, or 'supportability.'"). The ALJ's conclusion that Zaroff "gave too much reliance on the claimant's subjective complaints" is a permissible assessment of the supportability factor. (ECF No. 8, PageID.67). The undersigned suggests the ALJ adequately addressed the supportability of Dr. Zaroff's opinion when he concluded Zaroff's opinion was only partially persuasive because it relied too heavily on Plaintiff's subjective reports.

"Consistency" means that the more consistent a medical opinion is with the evidence from other medical and nonmedical sources in the record, the more persuasive the medical opinion will be. *Hague*, No. 20-13084 at *2 (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ noted that Dr. Zaroff's opinion was only partially persuasive because the other evidence in the record (Plaintiff's examinations, treatment notes, and activities) as well as the evidence at the hearing level suggested less restrictive mental limitations. (ECF No. 8, PageID.66-70). The ALJ noted a psychiatric exam on March 24, 2020, where Plaintiff had normal speed, a July 6, 2020, mental telehealth visit where Plaintiff's affect was "slightly" blunted but this exam was otherwise within normal limits. (*Id.*). The ALJ considered mental health visits on July 20, 2020, August 3, 2020, August 24, 2020, and October 5, 2020, where claimant was "calm; cooperative; and alert and originated in all spheres. Her speech was clear and coherent; and had normal rate and tone" her memory recall appeared to be "intact with no limitations noted" and she was in no apparent distress. (*Id.* at PageID.69). The ALJ considered the medical record related to Plaintiff's mental symptoms and determined that Zaroff's opinion was only partially persuasive given the *other mental health evidence* in the record. The undersigned suggests the ALJ adequately addressed the consistency of Dr. Zaroff's opinion when he indicated

12

where the mental health record was inconsistent with the greater limitations suggest by Dr. Zaroff's opinion.

The ALJ adequately addressed both supportability and consistency and the undersigned suggests the ALJ's determination that Dr. Zaroff's opinion was only partially persuasive is supported by substantial evidence.

Next, Plaintiff argues the RFC must be supported by at least one medical opinion. The ALJ considered three mental health expert opinions and determined each was partially persuasive. (ECF No. 10, PageID.580). Plaintiff asserts that because the ALJ concluded these expert opinions were only partially persuasive, the ALJ "had no medical opinion to rely on regarding [Plaintiff's] mental health work-related abilities." (*Id.*). The Court can swiftly dispose of this argument because the ALJ was not impermissibly interpreting raw medical data here, but weighing the relative value of a number of medical opinions in determining the RFC. The core function of the ALJ's task is to interpret the relative strength of various medical opinions, evidence, and testimony and concluding that medical opinions are partially persuasive, as here, does not render the ALJ's RFC finding unsupported by a medical opinion.

Plaintiff argues the second source of error is that the ALJ failed to consider Plaintiff's use of a cane in the RFC or explain his omission. "SSR 96-9p states, 'To find that a hand-held assistive device is medically required, there must be

13

medical documentation [1] establishing the need for a hand-held assistive device to aid in walking or standing, and [2] describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).'" *Palmer v. Comm'r of Soc. Sec.*, No. 19-CV-11020, 2020 WL 5209358, at *4 (E.D. Mich. Sept. 1, 2020) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). The mere prescription of a cane does not establish a cane is medically required under 96-9p. *Salem v. Colvin*, No. 14-cv-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (finding that ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the prescription did not "indicate the circumstances in which [the claimant] might require the use of a cane."); *Schwartz v. Comm'r of Soc. Sec. Admin.*, No. 4:18-CV-12190, 2019 WL 3943863, at *6 (E.D. Mich. Aug. 1, 2019), *report and recommendation adopted sub nom. Schwartz v. Comm'r of Soc. Sec.*, No. 18-CV-12190, 2019 WL 3936666 (E.D. Mich. Aug. 20, 2019); *Marko v. Comm'r of Soc. Sec.*, No. 2:16-CV-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (holding that nothing in a "mere prescription for a cane provides evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work.").

Plaintiff points primarily to her own subjective complaints to support her need for a cane and the impact it allegedly has on her work-related abilities. (ECF

No. 10, PageID.583). Plaintiff argues PA-C Hannah Rolfe documented Plaintiff's "fibromyalgia affects balance." (ECF No. 8, PageID.537). Ms. Rolfe is the only medical provider Plaintiff points to for the proposition that the cane was medically necessary. (ECF No. 10, PageID.584).

As for the cane, the ALJ noted that Plaintiff's subjective testimony was that she used a cane because of problems balancing and episodes of blacking out and falling down. (ECF No. 8, PageID.62). Plaintiff stated "the episodes of blacking out were related to medication side effects, therefore, her doctors took her off some of her medications. She said she still falls 1-2 times a month." (*Id.*). Plaintiff requested the cane at a September 2, 2020, appointment. (*Id.* at PageID.68). That said, the ALJ noted this same examination suggested Plaintiff was in no distress and her musculoskeletal examination revealed she had a normal range of motion and normal gait. (*Id.*). Even so, the provider, PA-C Hannah Rolfe, prescribed a cane. (*Id.* at PageID.69). The ALJ concluded Rolfe's opinion was not persuasive because it "is not generally well-supported by [the] explanation[,]" the provider "gave too much reliance on the claimant's subjective complaints[,]" the examination findings on this date were within normal limits, the provider's opinion was "not generally consistent with the records as a whole[,]" and the record of examinations, objective testing, the claimant's activities, treatment notes, and hearing testimony support light exertional work with the limitations opined. (*Id.*).

15

The medical record before the ALJ did not indicate when the Plaintiff might require the cane and the ALJ found the only medical opinion requiring a cane to be unpersuasive.  The ALJ articulated specifically his reasoning for discounting Plaintiff's allegations that her cane was medically necessary and for finding unpersuasive the only medical opinion related to the cane.  *Perdue v. Colvin*, No. 15-cv-14006, 2017 WL 362668, at *6 (E.D. Mich. Jan. 9, 2017) *report and recommendation adopted* 2017 WL 976790 (E.D. Mich. Mar. 14, 2017) (finding that the claimant was properly limited to light work "given the lack of documentation that a cane was medically necessary. . . .").  The undersigned suggests the record before the ALJ, which the ALJ referenced, did not support that a cane was medically necessary and the ALJ was not, therefore, required to discuss the cane in formulating the RFC.  Here, substantial evidence supports the ALJ's conclusion and Plaintiff has not demonstrated that she is more limited than her RFC.

G. **Conclusion**

Plaintiff has the burden of proof on her statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  From a review of the record as a whole, the undersigned suggests that the ALJ applied the correct legal standards in reaching his decision and substantial evidence in the record supports his findings.  Accordingly, the undersigned **RECOMMENDS** Plaintiff's motion

be **DENIED** (ECF No. 10), Defendant's motion be **GRANTED** (ECF No. 13), and the decision of the Commissioner of Social Security be **AFFIRMED.**

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: April 4, 2023                             s/Curtis Ivy, Jr.
                                                Curtis Ivy, Jr.
                                                United States Magistrate Judge